STATE of Maine

v.

Walter BURNHAM.

Supreme Judicial Court of Maine.

Argued June 18, 1992.

Decided July 6, 1992.

Stephanie Anderson, Dist. Atty. and Jane Lee (orally), Asst. Dist. Atty., Portland, for the State.

Julian L. Sweet (orally) and Paul F. Macri, Berman & Simmons, P.A., Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

RUDMAN, Justice.

Walter Burnham appeals from his conviction in the Superior Court (Cumberland County, *Lipez*, J.) following his entry of a conditional plea of guilty to the charge of operating a motor vehicle with a blood-alcohol content greater than 0.08% by weight. 29 M.R.S.A. § 1312–B (Pamph. 1991). Burnham challenges the court's rulings that the stop of his vehicle was supported by a reasonable and articulable suspicion, and that the certificate of the chemist who analyzed Burnham's blood sample, offered pursuant to Section 1312,[1] was ad-

---

1. 29 M.R.S.A. § 1312 provides that when a person who is certified by the Department of Human Services for this purpose analyzes a blood sample for alcohol content, that person may issue a certificate stating the results of the analysis and:

   That certificate, when duly signed and sworn to by the certified person, shall be admissible in evidence in any court of the State. It is prima facie evidence that the person taking a specimen of blood was a person authorized by subsection 6, that the equipment, chemicals and other materials

used in the taking of the ... sample were of a quality appropriate for the purpose of producing reliable test results, that any equipment, chemicals or materials required by subsection 6 to be approved by the Department of Human Services were in fact approved, that the sample tested by the person certified under subsection 6 was in fact the same sample taken from the defendant and that the drug concentration or percentage by weight of alcohol in the blood of the defendant was, at the time the blood ... sample was taken, as stated in the certificate, unless with 10 days'

missible prior to the admission of evidence (from a live witness or a Section 1312(6) certificate) that Burnham's blood sample was drawn properly. Finding no error in the court's rulings we affirm.

■ On June 29, 1991 at 12:45 a.m., Officer Bernard King of the Bridgton Police Department stopped Burnham's car on Route 117 after he saw it weave back and forth between the center line and the breakdown lane line about six times even though the car never actually crossed either line. The road was known as an animal crossing and Burnham was traveling between 35 and 40 mph even though the posted speed limit was 50 mph. When King spoke to Burnham, he noted that Burnham's eyes were glazed over and bloodshot, his speech was slightly slurred, and he had a moderate odor of liquor on his breath. Burnham admitted to having had a couple of beers earlier. Burnham performed poorly on three sobriety tests and a blood test revealed Burnham's blood alcohol content to be 0.22% by weight.

Burnham was charged in the District Court with driving while having a blood alcohol concentration of greater than 0.08% or while being under the influence of intoxicating liquor. He moved to suppress any evidence gained from the stop of his car arguing that Officer King did not have a reasonable and articulable suspicion for the stop. After a hearing, the court (Bridgton, *MacNichol, J.*) denied the motion. Burnham transferred his case to the Superior Court for a jury trial and on the morning of trial, he moved *in limine* to exclude the certificate to be offered by the State pursuant to Section 1312(8) that stated the re-

sults of his blood alcohol test. Burnham argued that the certificate was not admissible absent the foundational evidence that the phlebotomist followed the proper procedure in drawing the blood. The Superior Court denied the motion.

On the basis of that ruling, Burnham entered a conditional guilty plea pursuant to M.R.Crim.P. 11(a)(2), reserving his right to appeal the denial of his motion to suppress and motion *in limine*. Following his conviction, Burnham filed a timely appeal to this court.

I.

Burnham argues that evidence gained from the stop of his car should have been suppressed because Officer King did not have the requisite reasonable and articulable suspicion to stop the car. We disagree.

■ Under the fourth amendment to the U.S. Constitution and article I, section 5 of the Maine Constitution, for an officer to make a valid investigatory stop, the "officer must act on the basis of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *State v. Dulac,* 600 A.2d 1121, 1122 (Me.1992) (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968)). A suspicion of criminal activity or other legitimate safety concerns may warrant the stop. *State v. Mehuren,* 594 A.2d 1073, 1075 (Me.1991); *State v. Pinkham,* 565 A.2d 318, 319–20 (Me.1989). The court must find that the officer actually entertained a concern and that the concern was reasonable under the circumstances. *See*

written notice to the prosecution, the defendant requests that a qualified witness testify to any of the matters to which the certificate constitutes prima facie evidence.

29 M.R.S.A. § 1312(8) (Pamph.1991). Subsection 6 provides that a similar certificate may be issued by the person who drew the blood sample:

When a person draws a specimen of blood at the request of a law enforcement officer, that person may issue a certificate which states that the person is in fact a duly licensed or certified person as required by this paragraph and that the person followed the proper procedure for drawing a specimen of blood

for the purpose of determining the blood-alcohol level or drug concentration. That certificate, when duly signed and sworn to by the person, is admissible in evidence in any court of the State. It is prima facie evidence that the person was duly licensed or certified and that the person followed the proper procedure for drawing a specimen of blood for chemical testing unless, with 10-days' written notice to the prosecution, the defendant requests that the person testify as to licensure or certification, or the procedure for drawing the specimen of blood....

29 M.R.S.A. § 1312(6) (Pamph.1991).

*State v. Chapman,* 495 A.2d 314, 317–18 (Me.1985). The court's finding that a stop is reasonable is reviewed only for clear error. *Dulac,* 600 A.2d at 1122.

On the basis of the lateness of the hour, the unexplained weaving of the car, and the question of Burnham's speed, it was not clear error for the court to conclude that the officer was justified in stopping Burnham. *See Mehuren,* 594 A.2d at 1075; *Pinkham,* 565 A.2d at 320.

## II.

■ Burnham also argues that Section 1312, read as a whole, requires the proffer of a certificate or testimony that the phle-botomist followed the correct procedure in drawing the sample before the chemist's certificate attesting to the blood-alcohol content may be admitted.[2] We disagree.

Section 1312 provides a streamlined method of entering evidence of a defendant's blood alcohol test. The policy of the statute is to favor the admissibility of blood alcohol test results. *State v. Adams,* 457 A.2d 416, 420 (Me.1983). The language of the statute is plain and unambiguous. The chemist's certificate, like the phlebotomist's certificate, "when duly signed and sworn to by the certified person, shall be admissible in evidence in any court of the State." 29 M.R.S.A. § 1312(8). The admissibility of the chemist's certificate is not conditioned on the availability of a phlebotomist's certificate or testimony. Therefore, the court did not err in denying Burnham's motion.

The entry is:

Judgment affirmed.

All concurring.

---

**2.** Burnham does not raise and we do not ad-    dress the issue of sufficiency of the evidence.