STATE OF MAINE
ANDROSCOGGIN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-21-1

HERITAGE KNOLL ASSOC. II LP,

Plaintiff

v.

JASMINE BREWER,

Defendant

SEP 3 '21 PM 12:37
ANDRO SUPERIOR COURT

DECISION AND ORDER

The matter before the court is appellant Heritage Knoll Assoc. II LP's ("Heritage")

appeal of a Lewiston District Court decision denying Heritage's Forcible Entry and Detainer

("FED") action against appellee Jasmine Brewer. For the following reasons, the District Court

will be affirmed.

Background

Ms. Brewer entered into a lease agreement with Heritage on October 1, 2018. (Pl.'s Ex.

10, ¶ 2.) This lease provided for an initial term of one year, to end on September 30, 2019. (*Id.*)

The lease further provides that "[a]fter the initial term ends, the Agreement will continue for

successive terms of one year each unless automatically terminated as permitted by Section 18 of

this Agreement." (*Id.*) Section 18 states that the landlord, Heritage, may terminate the lease for

"material non-compliance with the terms of the agreement." (*Id.* ¶ 18.) Section 18 goes on to

define material non-compliance as:

1) one or more substantial violations of the Lease;

2) repeated minor violations of the Lease that;
   a) disrupt the livability of the project;
   b) adversely affect the health or safety of any person or the right of any
      Tenant to the quiet enjoyment of the leased premises and related project
      facilities;

1

c) interfere with the management of the project; or

d) have an adverse financial effect on the project

3) failure of the Tenant to timely supply all required information on the income and composition, or eligibility factors, of the Tenant household or to knowingly provide incomplete or inaccurate information; and

4) non-payment of rent or any financial obligation due under the Lease beyond any grace period permitted by State law. The payment of rent or any other financial obligation due under the Lease after the due date but within the grace period permitted under State Law constitutes a minor violation.

(*Id.*)

On November 3, 2020, Heritage issued Ms. Brewer a Notice to Quit. (Pl.'s Ex. 8.) The Notice to Quit cited Section 18 of the lease and informed Ms. Brewer that Heritage was terminating the lease due to material non-compliance with the terms of the agreement. (*Id.*) The Notice to Quit cited seven notices of violation, 4 of which were issued prior to October 1, 2020. (*Id.*)

At the FED hearing on February 23, 2021, Heritage moved to admit the Notice to Quit as evidence to prove the basis for eviction. (Tr. 7:10-18.) Counsel for Ms. Brewer objected on the grounds that the lease was divided into terms of one year each, meaning that violations before October 1, 2020 were during previous terms and could not be grounds for termination in the current term. (Tr. 8:6-9.) After lengthy argument from the parties, the District Court (*Montgomery, J.*) sustained the objection, stating ". . . I definitely recognize that this is a term of one year." (Tr. 16:2-3.) The District Court subsequently entered judgment in favor of Ms. Brewer because it found that Heritage failed to prove substantial or repeated violations within the current lease term, from which this timely appeal followed. (Tr. 65:8-11.)

Standard

Either party aggrieved by a District Court's judgment on a forcible entry and detainer action may appeal to the Superior Court on questions of law. *See* 14 M.R.S. § 6008 (2020); 14 M.R.S. § 6017 (2020); *see also* M.R. Civ. P. 80D(f)(1).

The trial court's rulings on issues of law are reviewable de novo, and the trial court's findings of fact may only be set aside if they are clearly erroneous. *See* M.R. Civ. P. 76D. A factual finding is clearly erroneous if (1) there is no competent evidence in the record to support it, (2) if the fact-finder clearly misapprehended the meaning of the evidence, or (3) if the force and effect of the evidence taken as a whole rationally persuades the appellate court "to a certainty" that the finding is "so against the great preponderance of the believable evidence that it does not represent the truth and right of the case." *Wells v. Powers*, 2005 ME 62, ¶ 2, 873 A.2d 361.

An appellate court will not substitute its judgment as to the weight or credibility of the evidence if there is evidentiary support in the record for the trial court's findings. *State v. Connor*, 2009 ME 91, ¶ 9, 977 A.2d 1003.

Discussion

The issue on appeal is rather narrow. Heritage claims that the District Court erred as a matter of law because Section 2 of the lease unambiguously extends the lease automatically at the end of each term and does not create a new one-year lease. Alternatively, even if subsequent lease terms count as new leases, Heritage argues that the plain language of the lease allows for violations during prior lease terms to roll over to the next term.

Where a contract is unambiguous its interpretation is a matter of law and the court interprets it according to plain meaning of the language used. *Camden Nat'l Bank v. S.S. Navigation Co.*, 2010 ME 29, ¶ 16, 991 A.2d 800. A contract is ambiguous if it is reasonably

3

susceptible to different interpretations. *Id.* If a contract is ambiguous, its interpretation is a question of fact for the factfinder. *Am. Prot. Ins. Co. v. Acadia Ins. Co.*, 2003 ME 6, ¶ 11, 814 A.2d 989.

Heritage's first argument misses the mark. The court cannot find anything in the transcript that suggests that the District Court held that Section 2 of the lease creates a new lease every year. Rather, the District Court quite clearly states that the lease has a "term" of one year. (*See* Tr. 16:2-3.) In its final statement to the parties, the District Court stated that Heritage had failed to show substantial or repeated violations within "this current one-year term of the lease." (Tr. 65:8-11.) The use of the singular "lease" here reflects the District Court's understanding that this was one lease divided into one-year terms, not consecutive one-year leases. Thus, the case law cited by Heritage purporting to show that automatic renewals are treated as lease extensions is beside the point, as this is precisely how the District Court interpreted the contract.

This case turns on a more mundane matter of contract interpretation. Heritage argues that reading the lease to not allow violations from previous terms to roll over would render part of Section 18 meaningless. *See Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 10, 878 A.2d 504 (courts will avoid an interpretation that renders meaningless any particular provision in the contract). Heritage cites the following line from Section 18 of the lease:

> Terminations for "other good cause" may only be effective as of the end of any initial or successive term.[1]

---

[1] Terminations for other good cause are defined in the lease, but that definition is not pertinent to any matter before the court.

4

(Pl.'s Ex. 10, ¶ 18.) Heritage argues that this line means that any grounds to terminate for good cause is only valid until the end of a lease term, which the lease would not need to specify if all grounds for termination were only valid until the end of a term.

Heritage's argument is based on an obvious misreading of the lease. Section 18 does not say that terminations for good cause are valid "until" the end of a lease term, it says that they are only valid *as of* the end of a term. (*Id.*) In other words, Heritage may not terminate the lease for good cause in the middle of a lease term, it must wait until the term ends. Section 18 does not say whether good cause from previous terms rolls over to subsequent terms, or whether other grounds for termination roll over. Heritage's argument on the contract terms has no merit.

The court finds that the lease is ambiguous as a matter of law. The lease agreement does not state whether violations from one term roll over into the next, nor does it state that each term stands completely independent from the others. Thus, the interpretation of the contract is a question of fact properly left to the District Court and may only be set aside if its findings were clearly erroneous. *See* M.R. Civ. P. 76D.

The District Court's findings are well supported. Ambiguities in a contract are interpreted against the drafter. *Champagne v. Victory Homes, Inc.*, 2006 ME 58, ¶ 8, 897 A.2d 803. Heritage is the drafter of the lease agreement. Therefore, the District Court did not need to consider any additional evidence to determine that violations did not carry over between lease terms. The District Court's interpretation of the contract was not erroneous.

5

The entry is

> The order of the Lewiston District Court in this matter is hereby AFFIRMED.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: _____, 2021

_____
Harold Stewart, II
Justice, Superior Court

6

Action: FED Appeal

    Heritage Knoll Associates, II          vs.          Jasmine Brewer

---

Plaintiff's Attorney                                    Defendant's Attorney

John Conway, Esq.                                    Lynn Ward, Esq.

Date of Entry

---

2021

Mar 16          Received 03-16-21:
                Notice of Appeal and Affidavit (FED) filed.

April 6         Received 04-05-21:
                Transcript of February 23, 2021 FED Hearing at LEWDC filed.

"     "         On 04-06-21:
                Notice and Briefing Schedule filed.
                Brief due May 17, 2021
                Copies to counsel.

May 14          Received 05-14-21:
                Notice of Email filing
                Brief of Appellant filed.

June 16         Received 06-16-21:
                Appellee's brief filed.

July 28         Received 07-28-21:
                Appellant's Reply Brief filed.

Sept 3          Received 09-03-21:
                Decision and Order filed.  (Stewart, J.)
                The order of the Lewiston District Court in this matter is hereby AFFIRMED.
                The Clerk is directed to enter this order into the docket by reference.
                Copies to parties.